UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

       Plaintiff,

                                    Case No. 08-20309-2

v.

                                    Honorable Patrick J. Duggan

GERETHA LEE,

       Defendant.

                                /

**OPINION AND ORDER DENYING DEFENDANT'S MOTION TO VACATE, SET
ASIDE, OR CORRECT SENTENCE PURSUANT TO 28 U.S.C. § 2255 AND
DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY**

On August 8, 2011, Geretha Lee ("Defendant"), a federal prisoner currently confined

at the Victorville Federal Correctional Institution in Adelanto, California, filed a *pro se*

motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Defendant

challenges her convictions for conspiracy to import a controlled substance, 21 U.S.C. §

963, conspiracy to possess with intent to distribute a controlled substance, 21 U.S.C. §

846, importation of a controlled substance, 21 U.S.C. § 952(a), and possession with intent

to distribute a controlled substance, 21 U.S.C. § 841(a)(1). The government responded to

Defendant's motion on September 19, 2011. For the reasons stated below, the Court

denies the motion and declines to issue a certificate of appealability.

### I. Factual and Procedural Background

The Court recites the facts of this case as summarized by the Court of Appeals:

In April of 2007, Lee, an Indiana resident, met Ricardo Vargas ("Vargas"), the co-defendant in the trial, and commenced a romantic relationship with him. On May 17, 2008, Lee traveled to Detroit, Michigan, with Vargas by car. During the trip, Vargas and Lee stopped to meet with Monique Miles ("Miles") in Michigan City, Indiana, a town en route to Detroit. Lee testifies that she had little contact with Miles during this interaction, and previously knew her only vaguely.

Lee testified that she was surprised to see Miles again in Detroit that evening. Vargas stayed behind in Detroit with Miles while Lee drove by herself to the Windsor Casino in Canada. Lee claims that Vargas instructed her to park on the fourth floor of the casino parking garage. She did so, and spent the next five hours in the casino. She also left her car doors unlocked while she was in the casino.

After receiving a call from Vargas, Lee immediately got into her car and proceeded to attempt to cross the border to return to Detroit. Lee crossed the border and entered the United States at 11:16 p.m. on May 17, 2008, and Miles, who apparently traveled to Canada sometime after Lee had, crossed the border into the United States that night on a Tunnel Bus at 11:27 p.m. Lee was then questioned by border patrol agents, and an ensuing search of the car revealed 6,000 ecstasy pills worth between $ 48,000 and $ 91,000 hidden behind the car's glove compartment.

While Lee underwent further questioning, she received a flurry of calls on her cell phone. When she saw that Miles was attempting to call her, Lee agreed to set up a controlled delivery using a story concocted by the border patrol agents. Following the direction of the agents, Lee told Miles that she had decided to go to IHOP and had parked the car at the local CVS on East Jefferson Avenue in Detroit. The agents parked the car there and put it under surveillance at approximately 2:20 a.m. on May 18, 2008. At approximately 2:40 a.m., Vargas appeared near the CVS store. During that time, Lee had received a phone call on her cell phone from a male. Agents watched as Vargas approached the car, opened the passenger side door, and leaned inside. Vargas then pulled himself out of the car, closed the door, and attempted to walk away. Customs agents then arrested Vargas.

After Vargas was arrested, Lee and the agents returned to the customs offices at the Detroit-Windsor Tunnel. One of the agents asked Lee to write out a statement, saying, "Now, it's your time, you're going to have to write out a confession of what has occurred tonight. I mean, I need something before I can let you go . . ." Lee agreed to make the statement, and after her car was released, she left around 3:30 a.m.

The statement Lee wrote reads as follows:

> I Geretha Lee is giving this statement confirming that Monique Miles asked me to go to Canada for her boyfriend to pick up extacy [sic]. She was to meet me after picking-up the extacy [sic]. She called me on my cell phone but I could not hear her phone was hanging-up or she was hanging-up on me. When I found out about the extacy [sic] she called me + asked me about my location. She had Ricardo wire me money.

*United States v. Lee*, 392 Fed. App'x 379, 380-81 (6th Cir. 2010). After a four-day jury trial, Defendant was convicted of the above-listed offenses and sentenced to imprisonment for 100 months. Her convictions were affirmed on appeal. *Id.* at 382. On August 8, 2011, Defendant filed a timely motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255, raising the following grounds for relief: (1) she was denied the effective assistance of counsel; (2) her confession was inadmissible because it was coerced; (3) the prosecutor erroneously charged her with offenses involving methamphetamine; (4) two of the counts in the Superseding Indictment constitute a violation of the Double Jeopardy Clause; and (5) her right to a speedy trial was violated.

## II. Standard of Review

A prisoner is entitled to relief under 28 U.S.C. § 2255 "[i]f the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack . . .." 28 U.S.C. § 2255. "To prevail on a § 2255 motion alleging constitutional error, the petitioner must establish an error of constitutional magnitude which had a substantial and injurious effect or influence on the proceedings."

*Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-638, 113 S. Ct. 1710, 1721-1722 (1993)). "To prevail on a § 2255 motion alleging non-constitutional error, the petitioner must establish a 'fundamental defect which inherently results in a complete miscarriage of justice,' or, an error so egregious that it amounts to a violation of due process." *Id.* (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)).

Defendant bears the burden of establishing the claims asserted in her petition. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). "It is a 'well-settled principle that to obtain collateral review relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal.'" *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998) (quoting *United States v. Frady*, 456 U.S. 152, 166, 102 S. Ct. 1584, 1593 (1982)).

### III. Discussion

**A. Coerced Confession**

Defendant argues that her statement to the police was coerced. In support of this claim, she points to her testimony at trial, where she stated: "I wrote the statement because I didn't know what was going on at the time and I was afraid. They weren't accepting the truth and [Special Agent] Divers told me I had to write the statement in order to go home." Trial Tr. vol. 4, 11, Oct. 3, 2008. Defendant also cites Special Agent Divers' statement to Defendant that "[n]ow, it's your time, you're going to have to write out a confession of what has occurred tonight. I mean, I need something before I can let you go . . .."

"The Fifth Amendment prohibits the prosecution's use of a defendant's compelled

4

testimony." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (citing *Oregon v. Elstad*, 470 U.S. 298, 306-07, 105 S. Ct. 1285, 1292 (1985)).  A confession is considered involuntary due to police coercion where: (i) the police activity was objectively coercive; (ii) the coercion in question was sufficient to overbear the defendant's will; and (iii) the alleged police misconduct was the crucial motivating factor in the defendant's decision to offer the statement.  *United States v. Johnson*, 351 F.3d 254, 260 (6th Cir. 2003).  The Court looks to the totality of the circumstances in determining whether the defendant's will was overborne in a particular case.  *Id.*  Among the circumstances considered are:

> the psychological impact on the accused by the totality of the circumstances of the confession, including the age of the accused, his level of education and intelligence, his physical condition and emotional state at the time of the confession, his expressed fears of violent reprisals, actual physical punishment, the proximity of the coerciveness of the confession as given, and the inherent coerciveness of the confession as given.

*United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992).  "[T]he government bears the burden of proving by a preponderance of the evidence that the confession was in fact voluntary."  *Johnson*, 351 F.3d at 260 (quoting *United States v. Mahan*, 190 F.3d 416, 422 (6th Cir. 1999)).

Although "a promise . . . of immediate release may be so attractive as to render a confession involuntary," *Wrice*, 954 F.2d at 411, the Court concludes that the facts of this case do not support such a finding.  During her initial interview, which lasted about fifteen minutes, Defendant waived her *Miranda* rights and began cooperating with the authorities.  According to testimony introduced at trial, Defendant then admitted that she and Monique Miles were driving to Canada to get pills for Miles' boyfriend.  Trial Tr. vol 3, 9.  She

admitted that she knew that something illegal would be placed in the car. Trial Tr. vol 3,

13. Defendant arranged for the controlled delivery to Vargas and voluntarily accompanied

the agents to the appropriate location. She made and received phone calls in accordance

with the story concocted by the agents. After the controlled delivery, the agents did not

subject Defendant to further interrogation, and only spoke with her briefly before she left.

Defendant was left on her own to write a statement while the agents focused on Vargas

and the processing of evidence. As Defendant had cooperated extensively with the agents

up to that point, no coercion was necessary to induce her to write a statement. The Court

concludes that the agents' conduct was not objectively coercive, and there is no evidence

indicating that Defendant's will was overborne. Defendant's statement repeated some of

her earlier admissions, undermining any claim that her statement was induced by Special

Agent Divers' alleged promise to release her. As Defendant's statement was voluntary,

there was no reason to exclude it at trial.

## B. Ineffective Assistance of Counsel

Defendant claims that she was denied the effective assistance of counsel. She alleges

a number of deficiencies in her attorney's performance, including: (1) failure to file a

motion to suppress Defendant's written statement; (2) failure to object to the admission of

Defendant's statement at trial; (3) failure to provide an explanation for not objecting to the

admission of Defendant's statement; (4) failure to advise Defendant properly as to her

plea; (5) failure to advise Defendant that the offenses relating to methamphetamine carried

a mandatory minimum sentence; and (6) failure to object to the sentencing of Defendant

for offenses relating to methamphetamine when Defendant claims that only ecstacy was

found.

To show that she was denied the effective assistance of counsel under federal constitutional standards, Defendant must satisfy a two-prong test. First, she must show that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In so doing, Defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.* at 689, 104 S. Ct. at 2065. In other words, Defendant "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689, 104 S. Ct. at 2065 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S. Ct. 158, 164 (1955)). Second, Defendant must show that the deficient performance prejudiced her defense. *Id.* at 687, 104 S. Ct. at 2064. To demonstrate prejudice, Defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S. Ct. at 2068. The prejudice inquiry "focuses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844 (1993).

Defendant's first three claims of ineffective assistance focus on counsel's failure to seek exclusion of her written statement. The Court has already concluded, however, that Defendant's statement was voluntary and there were no grounds for excluding it. Counsel is not required to file a meritless motion or make a frivolous objection.

Defendant argues that counsel failed to advise her properly as to her plea, as he did not explain that a methamphetamine charge carries a mandatory minimum sentence while an ecstasy charge does not. Even if Defendant's counsel failed to explain the mandatory minimum sentence to her, the Court concludes that Defendant cannot establish prejudice. Defendant signed an acknowledgment of the Superseding Indictment, dated September 29, 2008 and filed with this Court the same day, clearly providing:

> I know that if I am convicted or plead guilty, I may be sentenced as follows:
>
> Counts 1 through 4: Mandatory Minimum of 10 years imprisonment and a maximum of life imprisonment, a $4,000,000 fine, or both.

*See* Pl.'s Resp. Br. Ex. B. Counsel's alleged failure to point out the minimum sentence cannot have prejudiced Defendant where she was already aware of that information. Moreover, Defendant was not sentenced pursuant to the mandatory minimum sentence, as the Court concluded that the "safety valve" of United States Sentencing Guidelines § 5C1.2 applied to her. As noted above, Defendant was sentenced to imprisonment for 100 months, while the statutory minimum sentence was 10 years. Because the statutory minimum sentence was not applied, Defendant was not prejudiced by counsel's alleged failure to advise her of it.

Defendant also alleges that her attorney was constitutionally ineffective for failing to object to sentencing based on methamphetamine offenses. Defendant asserts that only ecstasy was seized, but the evidence presented at trial demonstrates otherwise. The parties stipulated that if called as a witness, a Drug Enforcement Administration Forensic Chemist would testify that the pills seized from Defendant's vehicle contained methamphetamine

and ecstasy.  Pl.'s Resp. Br. Ex. C.  Furthermore, the jury entered a special finding in its

verdict that Defendant had committed offenses involving methamphetamine.  Because

Defendant was found guilty of methamphetamine offenses, there was no reasonable basis

upon which counsel could object to sentencing for those offenses.  Defendant's counsel

did not perform deficiently by failing to make a frivolous objection.

**C. Methamphetamine-Related Charges**

In her third claim, Defendant asserts that the prosecutor erroneously charged her with

methamphetamine offenses when the substance discovered was ecstasy.  As noted above,

the evidence presented at trial established otherwise, and the jury made a special finding

that Defendant committed offenses involving methamphetamine.  Defendant cannot now

relitigate the facts underlying her convictions.

**D. Double Jeopardy**

Defendant asserts that the Double Jeopardy Clause was violated because she was

charged with conspiracy to import a controlled substance, 21 U.S.C. § 963, and conspiracy

to possess with intent to distribute a controlled substance, 21 U.S.C. § 846.  The Supreme

Court and the Sixth Circuit Court of Appeals, however, have addressed these two statutes

in the context of the Double Jeopardy Clause, and concluded that sentencing of a criminal

defendant for both offenses based on the same conduct does not violate constitutional

standards.  *Albernaz v. United States*, 450 U.S. 333, 344 n.3, 101 S. Ct. 1137, 1145 n.3

(1981); *United States v. Davis*, 809 F.2d 1194, 1205-06 (6th Cir. 1987).  The Court

accordingly concludes that Defendant's double jeopardy claim lacks merit.

**E. Speedy Trial**

Defendant asserts that her right to a speedy trial under the Sixth Amendment and the Speedy Trial Act was violated, and thus, her attorney should have moved to dismiss the indictment. The Court disagrees. The Speedy Trial Act provides that a defendant must be tried within seventy days of the date the indictment is filed, or the date upon which she appears before a judicial officer of the court, whichever is later. 18 U.S.C. § 3161(c)(1). Certain periods of time, however, are excluded from this calculation, including a "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(D). Also excluded is a continuance granted by the judge on his own motion or at the request of either party's counsel, "if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). A continuance may be appropriate where the defendant's counsel would otherwise be denied the reasonable time necessary for effective preparation. 18 U.S.C. § 3161(h)(7)(B)(iv).

Defendant initially appeared before Magistrate Judge R. Steven Whalen on May 30, 2008. Trial was set for August 5, 2008. On July 17, 2008, however, Defendant's counsel filed a motion to withdraw and for an adjournment of the trial date. The Court held a hearing, and on July 24, 2008, granted the motion, setting a new trial date of September 30, 2008. New counsel was appointed to represent Defendant, and her trial began on the scheduled date. Forty-seven days elapsed between Defendant's initial appearance and the filing of the motion to withdraw. The days between the filing and the disposition of this motion are excluded under § 3161(h)(1)(D). The Court's adjournment of the trial date at

defense counsel's request is also excluded, pursuant to § 3161(h)(7)(A), as this permitted

Defendant's new attorney to adequately prepare for trial.  Because only forty-seven days

of the seventy-day Speedy Trial clock elapsed, the Court concludes that Defendant's rights

were not violated.  Defendant's attorney did not perform deficiently by failing to request

dismissal of the indictment due to the alleged violation.

The Sixth Amendment to the United States Constitution guarantees that "in all

criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."

Compliance with the Speedy Trial Act does not bar a Sixth Amendment claim, but "'it will

be an unusual case in which the time limits of the Speedy Trial Act have been met but the

Sixth Amendment right to speedy trial has been violated.'"  *United States v. O'Dell*, 247

F.3d 655, 667 (6th Cir. 2001) (quoting *United States v. DeJesus*, 887 F.2d 114, 116 (6th

Cir. 1989)).  A Sixth Amendment speedy trial claim requires a balancing test in which the

Court weighs the conduct of the defendant and the prosecutor.  The factors considered

include: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's

assertion of her right; and (4) prejudice to the defendant.  *Barker v. Wingo*, 407 U.S. 514,

530, 92 S. Ct. 2182, 2192 (1972).

Defendant's trial began four months after her initial appearance.  The Court believes

that this is not a particularly extended delay, and even so, it is clear that the majority of the

delay is attributable to Defendant.  Defendant's counsel filed the motion to withdraw after

Defendant advised that she wanted a new attorney to represent her.  The motion was

promptly granted, and substitute counsel was appointed soon afterward.  A short delay was

necessary to allow Defendant's new attorney time to prepare for trial, and trial commenced

as scheduled.  Defendant failed to assert a speedy trial violation at the time, and the Supreme Court has held that "[t]he defendant's assertion of his speedy trial right . . . is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right."  *Id.* at 531-32, 92 S. Ct. at 2192-93.  Finally, there are no facts before this Court indicating that Defendant suffered prejudice from the delay.  The Court therefore concludes that Defendant's Sixth Amendment speedy trial claim lacks merit.

### IV. Conclusion

For the reasons set forth above, the Court concludes that Defendant is not entitled to relief based on the grounds asserted in her motion.

When a district court enters a final order adverse to a § 2255 movant, it must issue or deny a certificate of appealability.  Rule 11(a) of the Rules Governing Section 2255 Proceedings.  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  To demonstrate entitlement to a certificate of appealability, a movant must show "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Slack v. McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 1603-04 (2000) (internal quotation marks and citation omitted).  Stated differently, the movant must show "that reasonable jurists would find the . . . court's assessment of the constitutional claims debatable or wrong."  *Id.*  Reasonable jurists would not find this Court's assessment of the merits of Defendant's claims debatable or wrong.

Accordingly,

**IT IS ORDERED** that Defendant's motion to vacate, set aside, or correct sentence

pursuant to 28 U.S.C. § 2255 is **DENIED**;

**IT IS FURTHER ORDERED** that the Court **DECLINES** to issue Defendant a

certificate of appealability.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Date: December 15, 2011

Copies to:

David A. Gardey, A.U.S.A.

Geretha Lee, #42775-039
FCI Victorville Medium II
Federal Correctional Institution
P.O. Box 5300
Adelanto, CA 92301